The opinion of the Court was delivered by
Johnston, J.
It is scarcely necessary to take particular notice of the fourth ground of appeal, there being sufficient grounds to order a new trial without touching it; but, were it necessary, we should feel little hesitation in sustaining the charge of the Judge.
The same remark applies to the third ground. But as the right of the judge to advise the jury on the facts, is occasionally drawn into question, it may not be improper to make a few brief observations upon it. This right has been too often sustained to remain the subject of the least doubt. It is entirely reasonable and proper, and its exercise is not unfrequently called for by duty and expediency.
. Where the Court without attempting to withdraw the decision of the facts from the jury (to whom it unquestionably belongs,) has offered them the aid of its greater experience and more practised judgment, there is no reasonable pretext for the complaint that it has invaded their province or trenched upon their functions. The Court, itself, not unfrequently feels under obligation to an amicus for advice on the points of law before it; and it is not perceived that a jury occupies a position of superior sanctity or infallibility; or why it should be considered improper or offensive to present to their minds, in a public manner, the suggestions of wisdom and experience; or why, as fninisters of justice, their qualifications should be impaired by additional light.
It is not difficult to discover that such a procedure may be disagreeable, and tend to the disappointment of interested parties : but to the cause of justice of which both judge and *440 jury are tbe sworn ministers, it can, when judiciously exercised, scarcely fail to be satisfactory.
It would surely not diminish the qualifications of a jury, should there be found in its panel, those who had, by having previously occupied the position, become familiar with their duty, and experienced in its performance. How, then, can it fail to benefit them, when a virtuous and able magistrate, exhibits before their unpractised minds, those lights with which his daily occupation have rendered him familiar ?
It is his duty to sustain the weak, the unpopular and the ignorant; to uphold the justice of the cause. Can there be exhibited a grander spectacle than that of a public magistrate, firmly and uprightly engaged in the discharge of these high duties ?
In criminal causes, such as this, should he fail to offer on behalf of the prisoner, such suggestions as the occasion might bring to his mind, 'would it not be a deep offence against humanity and right ? And would it not be an equally plain offence and dereliction of duty, if when he saw on the other hand, the public interests, and the public justice committed to his care, about to be sacrificed, he should meanly shrink from their support ?
I pass on to the first and second grounds of appeal.
It appears from the report of the trial, that when Daniel Eogartie, a witness for the defence, was on the stand, Mr. Simons, the prisoner’s counsel, proposed “ to show by this and other testimoney, that the deceased was a turbulent and violent man, and carried arms about him, and that this was generally known,” which “ evidence as to deceased was ruled "out.”. This forms the first ground of appeal.
When Michael McFeeny was sworn for the prisoner, Mr. Simons said, “ I propose to show that on the day before this occurrence (the death of Saffron) the deceased and witnesses were employed together, and that this witness was with them ; hat the deceased then exhibited a quarrelsome and violent *441 disposition, and attacked the witness; and that on this occasion,- the prisoner interposed' and separated them, and that the deceased had threatened the prisoner.” The question was argued and the testimony “finally ruled out.” This constitutes the second ground of appeal.
The circuit Judge says, “In reference to the first ground of appeal, I did exclude the evidence which was offered, in reference to the character of the deceased, upon the authority of the doctrine laid down in 3 Green. Ev. sec. 37, at the same time intimating the opinion, v that if it had been doubtful whether the killing was from a just apprehension of danger, and in self-preservation,’ I should have held it admissible upon the authority of Monroe's case, (5 Georgia Rep. 85.) I also excluded the proposal referred to in the second ground of appeal.”
The appeal from this ruling raises questions of no ordinary importance, though the principles governing them do not appear to be unusually difficult.
Lord Gamden, in the memorable debate on Fox’s bill,(a) while contending for the right of juries to render a general verdict in cases of libel, illustrated his position by referring to cases of homicide. Speaking of intention, he argued: “ A man may kill another in his own defence, or under various circumstances, which render the killing no murder. How are these things to be explained? By the circumstances of the case. What is the ruling principle ? The intention of the party. Who decides on the intention of the party ? The judge ? no, tbe jury. What is the oath of the jury ? well and truly to try the issue joined, which is the plea of not guilty to the whole charge.”
This passage shows, in a striking manner, that the intention and not the mere formal act, is the essence of crime ; and that the necessity of embracing the fact of intention in a *442 verdict of guilty or not guilty gives the solution of the whole issue to the jury.
As this great master of the law truly says, “ the ruling principle” is “the intention of the party” to be decided, not by the “judge” but by “the jury” from “the circumstances of the case.”
When the State proves the killing, without more, the law infers a criminal intent, and throws on the prisoner the necessity of explaining away this legal presumption: and how can he do it, (his intention depending on the circumstances,) unless he be allowed to show what tbe circumstances were ?
I have been accustomed to think that the circumstances that surround a man always serve to throw light not only upon his language (which is known law in another forum,(b) with which I am more familiar than with this,) but also upon his acts. The words uttered, the language written, the acts done, speak for themselves, and are the only subject ofinterpretation; but they are read and interpreted in the light of the circumstances which prompted them, and to which they always tacitly refer. The same act done under different cir-' cumstances may have a very different meaning. If a man slay another in battle, he is a hero and a patriot. If, while repelling a criminal and dangerous assault on bis person or his house, it is a defensive and rightful act. If it is done under that degree of provocation which would work up the infirmities of a man of proper social feelings, and of peaceable disposition, to the hasty shedding of blood, it is manslaughter. The circumstances must determine the intention and the case.
I do not mean the mere circle of facts immediately surrounding the parties at the moment of the fatal act; but the facts more or less remote, according to the case, which may reasonably be supposed to have been in the minds, or con *443 templation of the parties at that time; the facts to which their conduct may be supposed to have tacitly referred the facts : which may be reasonably intended to have prompted the fatal act.
When the jury who are to decide on the intent, have these facts before them, and not till then, they have the means of intelligent and conscientious judgment.
The authorities quoted in argument, for the prisoner, give full support to his motion. I regret that, in the heavy business of this Court, neither my time nor my strength permits me, as I would desire, to bring out in this opinion such portions of these authorities as would, in my judgment, show the law to be as I have stated. I cannot, however, refrain from pointing particularly to the case of Monroe, plaintiff in error, vs. The State of Georgia,(c) as a controlling authority on the points before us; a case argued and decided with ability, and in which nearly all the cases referred to were cited. Contenting myself with this reference, I proceed to the few other observations I deem it essential to mate.
It seems hardly necessary to observe, that evidence of the character and habits of the party slain is proper only so far as they can be supposed to have affected the intention of the slayer, in the fatal act. And, therefore, his general bad character is inadmissible. The evidence should be confined to a character and habits of violence, treachery, &c., such as might beget reasonable apprehensions of grievous bodily harm, and reduce the other party to the apparent necessity to slay in self-preservation.
Such an apprehension may be, also, created by particular preceding acts, reasonably connected in point of time, or occasion, with the fatal recontre; or by threats, as well as by the general habits or conduct of the deceased; and, may, therefore, be the proper subjects of evidence.
*444 But whether the general character, or conduct, or particular acts of the description mentioned, be offered, it appears to be essential to their reception, that it should, some how, reasonably appear that the prisoner knew, or may be supposed to have known, such character or conduct; for, if he was ignorant of them, they could not possibly have modified his intention in the act of slaying.
And, of course, if the relevancy of the testimony does not appear from the prior evidence in the case, the party offering it must lay a foundation for its reception in the proof of facts making it relevant; and the Court must, necessarily, have the power to decide, subject to review, upon its relevancy.
We are all of opinion that the Circuit Court was in error, in rejecting the testimony proposed, which the circumstances showed to be proper; and, therefore, as it should have gone before the jury, however trivial its effect might have been (of which we are not the judges), we feel constrained to grant the motion for a new trial; and it is so ordered.
Motion for new trial granted.
O’Neall, C. J., and Wardlaw, J., concurred.

Motion granted.

 16 May, 1792, 5 Camp. Lives of Chancellors, 342.

 5 Rich. Eq. 155.

 5 Geo. R. 85.